COMMERCE CONSULTANTS
INTERNATIONAL, INC.,
Appellant,

v.

VETRERIE RIUNITE, S.p.A., Appellee.

No. 88–7077.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 22, 1988.

Decided Feb. 14, 1989.

Russell J. Gaspar, Washington, D.C., for appellant.

Dario Ceppi, New York City, for appellee. Mark C. Ellenberg and David F. Williams, Washington, D.C., also entered appearances for appellee.

Before EDWARDS, WILLIAMS, and FRIEDMAN,* Circuit Judges.

Opinion for the Court filed by Circuit Judge FRIEDMAN.

FRIEDMAN, Circuit Judge:

This is an appeal from an order dismissing, for improper venue, a breach of contract suit by an American corporation against the other party to the contract, an Italian corporation. *Commerce Consultants Int'l v. Vetrerie Riunite*, No. 87–2104 (Jan. 28, 1988, D.D.C.). The ground

---

* Daniel M. Friedman of the Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

for dismissal was that, under the contract, suit could be brought only in an Italian court. We affirm.

## I

A. The appellant, Commerce Consultants International, Inc. (Commerce Consultants), a District of Columbia corporation, entered into a written contract with Vetrerie Riunite, S.p.A. (Riunite), an Italian corporation, under which Commerce Consultants became Riunite's exclusive agent for the sale of Riunite's lenses in North America. The written agreement was drafted in English for Commerce Consultants by its employee Michael Galbraith, who was fluent in Italian, but not a lawyer. According to Galbraith's affidavit, Galbraith "was the sole person responsible for all of the relations between" the two companies.

The draft of the agreement that Galbraith sent to Riunite's representative in the negotiations, Rossi, contained the following provision:

13. The validity, enforceability and interpretation of this agreement shall be determined and governed by the laws of the District of Columbia, U.S.A.

In a letter that accompanied the agreement, written in Italian, Galbraith stated: "Of course, should you wish to modify any provision, we would be pleased to comply, based on your comments."

In response, Rossi stated in a Telex that his company was "in agreement with all points" except for two, one of which was (as translated into English by Galbraith):

Responsible will be the Verona court rather than the United States one.

Galbraith then redrafted paragraph 13 of the agreement to read:

13. The validity, enforceability and interpretation of this agreement shall be determined and governed by the appropriate court of Verona, Italy.

Galbraith sent the revised agreement to Rossi, and Riunite executed it.

B. More than a year after the contract was signed, Commerce Consultants filed in the district court a suit against Riunite alleging that Riunite had breached the contract by itself selling its products in the United States, in violation of Commerce Consultants' appointment as Riunite's exclusive sales agent there, and by terminating the contract before its expiration date.

Riunite moved, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, to dismiss the complaint for improper venue, because under the contract such a suit could be maintained only in the courts of Verona, Italy. The district court granted the motion.

The court held that paragraph 13 of the "agreement is unambiguous and the product of fair arms-length bargaining," and that it was a "choice-of-forum clause" and not a "choice-of-law" provision. The court rejected Commerce Consultants' contention that "even if the contract language is construed as a choice-of-forum provision, it should not be enforced because under the Italian system for conducting civil cases, CCI would effectively be deprived of its day in court." *Id.*, slip op. at 5. The court stated that "[t]he court sees no reason to believe that reliance on the Italian courts will depreive [sic] CCI of its day in court." *Id.* at 6. The court

conclude[d] that paragraph 13 of the parties' agreement of February 26, 1986 requires plaintiff's claims to be brought in the courts of Verona, Italy. Defendant's motion to dismiss this case for improper venue is granted.

*Id.*

## II

The district court correctly held (A) that paragraph 13 of the contract was a choice-of-forum and not a choice-of-law clause, and (B) that enforcement of paragraph 13 to require that the case be brought in Italy was proper.

A. Paragraph 13 unambiguously specified where any litigation relating to the contract should be conducted and, by implication, what law should be applied in such case. It states that the "validity, enforceability and interpretation" of the contract "shall be determined" by the "appropriate court of Verona, Italy" and that

in making that determination the law of that court shall govern. This clear language cannot be read, as Commerce Consultants would read it, as permitting suit in the United States and requiring only that in deciding that suit the American court would apply Italian law.

This interpretation of paragraph 13 is confirmed by the negotiation of that provision. As Mr. Galbraith originally drafted it, paragraph 13 designated the law of the District of Columbia as governing any question relating to the contract. In response to an objection by Riunite that it could not agree to the provision and that "the Verona court rather than the United States one" should be "[r]esponsible," Galbraith changed the provision, as he had indicated he would be willing to do, to conform it to Riunite's demand, *i.e.*, that any litigation regarding the contract would be conducted in an Italian court.

In light of this clear language of paragraph 13 and the negotiations that produced it, Commerce Consultants cannot rely on the statement in Galbraith's affidavit, which was filed long after the contract was negotiated and as part of Commerce Consultants' response in opposition to Riunite's motion to dismiss, that:

> I understood Mr. Rossi's statement to be a request from VR to change the substantive law that "determined and governed" the relationship from the laws of the District of Columbia to the laws that would be applied by the courts of Verona. It was in this sense that I understood the word "[r]esponsible" used in the telex.... I did not believe that the requested change had to do with the choice of forum for disputes, which was not addressed by the Paragraph.
>
> ... I accepted that the laws "governing and determining" the relationship would be the laws of the Court of Verona. However, I would have never agreed to the possibility of having to go to Italy to protect CCI's rights under the agreement, because I had often been told that Italy operates one of the most inefficient and unpredictable legal system [sic] in the Western world.

Apart from the fact that the language of paragraph 13 of the agreement as executed is clear, so that there is no occasion to refer to parol evidence to interpret it, Mr. Galbraith's position ignores the significant change made in the provision as a result of Mr. Rossi's objection to the original version. The change did not substitute the laws of Verona for those of the District of Columbia; instead it provided that "the appropriate court of Verona, Italy" would determine disputes relating to the contract on the basis of its laws. Although Mr. Galbraith was not a lawyer, he surely was aware that specifying the court that would determine disputes concerning the contract was not the same thing as specifying the law that would be applied in resolving such disputes. It was Mr. Galbraith who made this change in response to Rossi's objection, and Commerce Consultants cannot now be heard to state that the revised paragraph 13 that Mr. Galbraith drafted does not really mean what it says.

■ B. In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court upheld a provision in an international towage contract between an American and a German corporation that any dispute under the contract would be litigated before the London Court of Justice. The Supreme Court stated that "such [forum-selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913, footnote omitted. It ruled that "[t]he choice of that forum was made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts." *Id.* at 12, 92 S.Ct. at 1914. The Court concluded that to invalidate a forum-selection clause, a party challenging it must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 18, 92 S.Ct. at 1917.

More recently, the Court stated that *The Bremen* and *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), which relied upon *The Bremen* in applying and upholding a clause in a business acquisition agreement between an American and a German corporation providing for arbitration of any disputes under the contract in Paris, "establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985).

In the present case, as in *The Bremen*, the "choice of [the Italian] forum was made in an arm's-length negotiation by experienced businessmen." 407 U.S. at 12, 92 S.Ct. at 1914. Commerce Consultants has not shown that trial of this case in Verona, Italy, will be "so gravely difficult and inconvenient" that it "will for all practical purposes be deprived of [its] day in court." *Id.* at 18, 92 S.Ct. at 1917.

The sole ground upon which Commerce Consultants seeks to avoid its agreement for trial in Verona is that discovery proceedings in the Italian court would be inadequate to enable it to develop its case. When Commerce Consultants agreed to the requirement of paragraph 13 that litigation of contractual disputes would be conducted in the courts of Verona, it also necessarily accepted the procedures that those courts follow. Commerce Consultants cannot now avoid the forum-selection clause on the claim that it "has a right to the same judicial process in the imposed forum that it would have in its chosen forum. This interpretation would make a mockery of the policy behind enforcing these clauses." *Karlberg European Tanspa, Inc. v. JK–Josef Kratz*, 618 F.Supp. 344, 348 (N.D.Ill. 1985).

Commerce Consultants has fallen far short of making a showing that would entitle it under *The Bremen* to avoid the contractual commitment into which it freely entered. In *The Bremen*, the Court pointed out: "The expansion of American business and industry will hardly be encouraged if notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." 407 U.S. at 9, 92 S.Ct. at 1912. We agree with the district court that Commerce Consultants' argument about the inadequacy of Italian discovery proceedings "reflects the very kind of parochial attitude in comparing foreign judicial systems to our own that the Court specifically rejected in *The Bremen* and *Mitsubishi Motors.*" *Commerce Consultants*, slip op. at 5–6.

The judgment of the district court granting Riunite's motion to dismiss the complaint is

AFFIRMED.